# United States Court of Appeals
## For the First Circuit

No. 18-1648

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTIAN RIVERA GALÍNDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado Hernández, U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Rick Nemcik-Cruz for appellant.
Francisco A. Besosa-Martínez, Assistant United States
Attorney, with whom W. Stephen Muldrow, United States Attorney,
and Mariana E. Bauzá-Almonte, Assistant United States Attorney,
Chief, Appellate Division, were on brief, for appellee.

June 2, 2021

**THOMPSON**, <u>Circuit Judge</u>.

**Overview**

An apartment search by the Puerto Rico police led to Christian Rivera Galíndez's arrest and indictment for possessing and aiding and abetting the possession of drugs (cocaine, crack, and marijuana) with intent to distribute them; and possessing and aiding and abetting the possession of a gun (a green and black .40-caliber Glock pistol with an obliterated serial number) in furtherance of a drug-trafficking crime (we will sometimes shorten the second charge to "gun possession" or some variant of that, for easy reading).[1] Culpable possession may be "actual or constructive," as well as "sole or joint." <u>See</u> <u>United States</u> v. <u>Tanco-Baez</u>, 942 F.3d 7, 25 (1st Cir. 2019) (quotation marks omitted).[2] And the government premised its case on his having

---

[1] Per "Spanish naming conventions, if a person has two surnames, the first (which is the father's last name) is primary and the second (which is the mother's maiden name) is subordinate." <u>United States</u> v. <u>Martínez-Benítez</u>, 914 F.3d 1, 2 n.1 (1st Cir. 2019). So we use "Rivera" instead of "Rivera Galíndez" from now on.

[2] Also keep the following in mind as we approach the controversy before us:

- Constructive possession exists if "a person knowingly has the power at a particular time to exercise dominion and control over an object." <u>United States</u> v. <u>Nuñez</u>, 852 F.3d 141, 145 (1st Cir. 2017) (quotation marks omitted).

- "Dominion and control over an object" often "may be found through inference, based on a showing of dominion and control over the area in which the object is found." <u>Id.</u>

constructively possessed the drugs and the gun, because when the police came to the apartment with a search warrant in hand, they found him in a room with these items and only he had a key that opened a padlock on the apartment's front gate (an officer tried a key on Rivera's key chain, and it worked).

In the run-up to trial, Rivera moved to suppress the seized evidence.[3] Testifying at a motion hearing, he claimed that the police had confronted him and his girlfriend as they sat in a car near the apartment; searched them and his auto; ordered them to go upstairs to the apartment's living room, on pain of being tasered if they refused; kept them there as they rifled through the rooms; showed him the drugs and the gun, a pistol he recognized as being the one he had hidden in his car; and then hauled them away in cuffs, with the seized items in tow. The defense's major theme was that the police had taken the gun from his car and planted it in the apartment to link him to the drugs there. The district judge denied the motion, however, a ruling left unchallenged on appeal.

---

- And "constructive possession may be found based wholly on circumstantial evidence." Id.

[3] FYI, one codefendant found in the apartment with Rivera pled guilty to the gun-possession charge and another codefendant pled guilty to the cocaine-possession and gun-possession charges.

The trial proceeded apace. And we will have a lot to say about what went on there. But for now it is enough to note the following.[4] The government elicited testimony showing that agents found Rivera and others in one of the apartment's bedrooms — the very room where they discovered the gun (on a bed, partially obscured by a pillow) and some of the drugs. He — and only he — had a key that opened the padlock (as we just said). And his cellphone had photos of drugs. He did not take the stand at trial. But his lawyer tried to poke holes in the government's constructive-possession theory through cross-examination, which Rivera's team hoped would persuade the jury that he had no control over the apartment and so did not constructively possess the drugs or the gun. Apparently unconvinced by the defense's efforts, the jury convicted him on all charges.

Still proclaiming his innocence, Rivera attacks four evidentiary rulings and three jury instructions. We move straight to his arguments, laying out the relevant background as needed. But to give away our conclusion up front, because he offers no winning ground to reverse, we affirm.

---

[4] The background events are essentially undisputed unless otherwise noted.

- 4 -

**Evidentiary Issues**

Like the parties, we start with Rivera's complaints about some of the judge's evidentiary decisions. The first concerns the judge's ruling admitting evidence of Rivera's prior gun conviction in a Puerto Rico court — a conviction since vacated by a Puerto Rico appellate court. The second concerns the judge's ruling barring the defense from impeaching an agent with a statement in his police report by a codefendant that the codefendant had bought the padlock and had a key to it. The third concerns the judge's ruling excluding audio from a police video of the apartment search that captured Rivera's telling an agent that a key seized belonged to the car that the police had already searched. And the fourth concerns the judge's ruling blocking the defense from questioning an agent about the "work plan" for the execution of the search warrant.

The government argues that the judge committed no error — but if he did, any error was harmless.

*Standards of Review*

We review preserved objections to evidentiary rulings for abuse of discretion, reversing only if any abused discretion caused more than harmless error. See, e.g., United States v. Taylor, 848 F.3d 476, 484 (1st Cir. 2017) (explaining that the burden is on the government to show that any nonconstitutional

evidentiary error did not affect substantial rights, *i.e.*, that "it is highly probable that the error did not contribute to the verdict" (quotation marks omitted)); United States v. Shea, 159 F.3d 37, 40 (1st Cir. 1998) (same). But we review unpreserved objections for plain error, which is — by design — extremely hard to establish: an appealing party must show not just error but error that is plain (which means an irrefutable error given binding precedent), that is prejudicial (which almost always requires that the error affected the proceeding's outcome), and that if not made right by us (using our discretion) would seriously undermine the fairness, integrity, or public perception of the judicial system. See, e.g., United States v. Rivera-Carrasquillo, 933 F.3d 33, 48 n.14, 55 (1st Cir. 2019), cert. denied, 140 S. Ct. 2691 (2020).

*Rivera's Since-Vacated Prior Conviction*

About a month before Rivera committed the acts alleged in the federal indictment, he (according to a Puerto Rico complaint) illegally possessed and used a green and black .40-caliber Glock pistol, one of five charges (including murder and aggravated robbery) that a nonunanimous jury convicted him on in a Puerto Rico court (a witness described the gun, apparently — the police never recovered it). Over the defense's objection, the judge in our case made two key rulings regarding the admissibility of the illegal-gun-possession conviction. Citing Federal Rule of

- 6 -

Evidence 404(b), the judge found the evidence "special[ly] probative . . . for knowledge and intent," because it shows, "if the jury decides to credit it," that Rivera "knew what the firearm was, how to possess the firearm, how to carry and use a firearm" — which was "a military green and black" pistol, like the one in the federal case.[5]  And citing Federal Rule of Evidence 403, the judge found the evidence's probative value not substantially outweighed by any unfair prejudice, because the government would introduce a redacted judgment omitting any reference to the other convictions (including the ones for murder and aggravated robbery)

---

[5] Taking a swipe at the judge's "knew what a firearm was" comment, Rivera notes how a district judge in a different circuit did not think much of the government's argument that a defendant's prior gun-related convictions should come in under 404(b) to show "[t]hat he knew what a firearm was," plus "he knew that what he had in his possession was in fact a firearm."  "[D]o we really think that there's anybody in the world who doesn't know what a gun is?" the judge there asked.  See United States v. Adams, 783 F.3d 1145, 1147 (8th Cir. 2015).  But the problem for Rivera is that the Adams judge admitted the prior convictions.  And the appellate court found no abuse of discretion.  See id. at 1149 (commenting that "[w]e have held on many occasions that prior convictions of firearm offenses are admissible to prove that the defendant had the requisite knowledge and intent to possess a firearm").

and because the judge would warn the jury against using this evidence to infer bad character.[6]

Testifying for the government at trial, an agent described the gun taken during the apartment search as "black on the top and like military color on the bottom" — with the two-tones being "unusual," because the gun "doesn't come from the factory in that manner."  The agent also noted that the police found Rivera "in possession of a green, military green and black pistol" roughly a month before the events giving rise to the federal charges.  And the government entered into evidence redacted versions of the Puerto Rico complaint and judgment — which (among other things) made clear that a Puerto Rico jury found him guilty of carrying "a military green and black gun" (language taken from the complaint).

The judge then gave an immediate limiting instruction, telling the jurors that

---

[6] The government first argued that the gun "was similar to the gun in this case" and later argued that it was "actually the same gun" given its "unique" and "peculiar" color scheme. Rivera's briefs claim that the prosecution's ballistics expert in the Puerto Rico case totally debunked the same-gun theory.  As support, his briefs cite to defense counsel's argument to the district judge about what he heard had happened at the Puerto Rico trial (counsel did not represent Rivera during the Puerto Rico proceedings).  But because attorney argument is *not* evidence, see United States v. Chisholm, 940 F.3d 119, 128 (1st Cir. 2019), this line of attack does not affect our analysis.

the conviction you just heard about is not evidence that the defendant has a bad character or that he acted here in conformity with any such character. You may consider that conviction as evidence that he knew what a firearm was, how to possess the firearm, how to carry it from one location to another location and how to use it.

The judge added that

[y]ou may also consider that conviction as evidence of intent to possess that firearm in this case. You should also know that the conviction, which took place in the Puerto Rico Court of First Instance, is on appeal.

The judge's final charge to the jurors included a similar instruction. "A particular item of evidence," the judge said,

is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose and not for any other purpose. You may recall that such occurred during trial, and I instructed you on the purposes for which the item could and could not be used.

"In particular," the judge explained,

you heard evidence that the defendant was convicted in the Court of First Instance of Puerto Rico of carrying and using without a license in violation of Puerto Rico law a military green and black pistol. The conviction is on appeal.

"It is not evidence," the judge pointed out,

that the defendant has a bad character or that he acted here in conformity with any such character. You may consider it as evidence that he knew what a firearm was, how to possess it, how to carry it from one location to another, and how to use it, as well as for

whether [he] had the state of mind or intent necessary to commit the crime charged in . . . the [i]ndictment.

Rivera voiced no objections to these instructions.

Rivera thinks the judge gaffed it by ruling that the prior-conviction evidence had special relevance and was not unfairly prejudicial. The government, contrastingly, thinks the judge got it exactly right.

404(b) bans other-acts evidence in some situations but allows it in others. "Evidence of . . . crime[s], wrong[s], or act[s]" (other than ones at issue in the case) may not be offered to "prove a person's character" but may be offered if it has some special, noncharacter-based relevance — like to prove knowledge or intent. See, e.g., Fed. R. Evid. 404(b); United States v. Sabean, 885 F.3d 27, 35-36 (1st Cir. 2018). Pertinently for present purposes, a judge performing a 404(b) analysis must ask whether the other-acts evidence is specially relevant to something other than a defendant's character, see Sabean, 885 F.3d at 35 — knowing that the special-relevance "standard is not particularly demanding," see United States v. Wyatt, 561 F.3d 49, 53 (1st Cir. 2009) (quotation marks omitted). If the answer is yes, the judge must then ask whether the evidence's admission would violate 403 — which bars evidence that causes prejudice that substantially outweighs its probative worth. See Sabean, 885 F.3d at 35; see

- 10 -

also United States v. Saccoccia, 58 F.3d 754, 778 (1st Cir. 1995) (emphasizing that we give a "high degree of deference" to a judge's "balancing of probative value against unfairly prejudicial effects"). And if the answer is no, the judge can admit the evidence unless it is excludable under some other rule.

As a constructive-possession case — again, prosecutors claimed Rivera constructively possessed the pistol — a key issue was "whether the defendant was in *knowing* possession."[7] See United States v. Aguilar-Aranceta, 58 F.3d 796, 798 (1st Cir. 1995); see also United States v. Ridolfi, 768 F.3d 57, 61-62 (1st Cir. 2014) (recognizing that "[c]onstructive possession of a firearm may be established when a person knowingly has the power and intention at a given time of exercising dominion and control over it either directly or through others" (quotation marks and alteration omitted)); United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005) (stating that, when it comes to constructive possession, "the requisite knowledge and intention can be inferred from circumstances, such as a defendant's control over the area where the contraband is found"). And because this element can be hard to establish, what with defendants often implying that they were

---

[7] As we will see later (when we take up the instructional issues), Rivera thinks the judge reversibly erred by using the "knowing" mental state for this offense — but he is wrong.

"merely . . . innocent and unknowing bystander[s]" (as Rivera's team tried to do on cross-examination), other-acts evidence may be specially relevant to establish knowledge and intention. See Aguilar-Aranceta, 58 F.3d at 799; United States v. Powell, 50 F.3d 94, 100 (1st Cir. 1995). Powell nicely illustrates that point. A case involving firearm possession by a felon, Powell held that evidence of the defendant's prior gun possession "had special relevance" to "whether [he] possessed firearms in the months preceding" the charged crime, "had an opportunity to obtain firearms," and "had knowledge of the availability of firearms." See 50 F.3d at 100 (quotation marks omitted); see id. (noting our prior approval of "the power and the intention" formulation in discussing "actual or constructive" possession (quotation marks omitted)).

That Rivera had the same or similar gun about *a month* before the facts giving rise to the federal indictment is specially relevant to the constructively-possessing-a-gun charge (independent of any taboo character inferences). See id. at 100-01; see also United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008) (holding that prior robberies "occurr[ing] within fifteen months of the [charged] robbery" were not too remote in time to be specially relevant); United States v. Fields, 871 F.2d 188, 198 (1st Cir. 1989) (explaining that "there is no absolute

- 12 -

rule governing the number of years that can separate offenses"). But wait, says Rivera. The other-acts evidence, he correctly notes, must be "*similar*" to the charged crime "to demonstrate the unlikeliness that the defendant" had innocent-and-unknowing-bystander status. See Aguilar-Aranceta, 58 F.3d at 799 (emphasis added). And to his way of thinking, the requisite similarity is missing here, because (for example, and to quote his brief) the federal "charge is possessing a gun (constructively) in furtherance of a drug trafficking crime" while the Puerto Rico charge was "carrying a firearm without a license." We think otherwise, however, given the dead-on similarities between the gun in the federal case and the gun in the Puerto Rico case — both were green and black .40-caliber Glocks, do not forget. See Wyatt, 561 F.3d at 53 (stressing that other-acts evidence need not be identical to the charged offense as long as it has "enough . . . similarity" to allow a jury to infer defendant's knowledge).

Which segues into Rivera's next argument. Perhaps sensing vulnerability on the similarity front, he attacks the idea that a "two-toned" Glock is in any way "unique" or "unusual." Telling us that Glocks are "ubiquitous in Puerto Rico," he claims that the manufacturer produces pistols with two tones — without, however, citing any record evidence to support either assertion. Having failed to raise these arguments below, he must establish

plain error.  But he makes no attempt to do so.  And because it is not our job to fill in that gap, his "failure waives this claim."  See United States v. Cruz-Ramos, 987 F.3d 27, 40 (1st Cir. 2021) (citing a bunch of cases); see also United States v. Rodríguez-Torres, 939 F.3d 16, 40 (1st Cir. 2019); Rivera-Carrasquillo, 933 F.3d at 49.[8]

Shifting gears, Rivera contends that the other-acts evidence had "negligible" probative value on the "knowledge or intent" issues.  And that is because, the argument continues (emphasis ours), "he didn't bring *his pistol* to the apartment," but rather the police did.  Not only did he surface this argument in his reply brief (he omitted it from his opening brief), which means it comes too late.  See Cruz-Ramos, 987 F.3d at 43; Small Justice LLC v. Xcentric Ventures LLC, 873 F.3d 313, 323 n.11 (1st Cir. 2017).  But his appellate lawyer (who was not his trial lawyer) conceded at oral argument that he could not say that this theory ever reached the jury, because he did not order a transcript "of that part of the case."  See Rodríguez v. Señor Frog's de la

---

[8] Sticking with the color issue, Rivera blasts the judge's "limiting instruction" for "higlight[ing] the similar color of the two guns."  But his silence in the face of this instruction means he must prove plain error — a feat he does not even try, which dooms this argument.  See, e.g., Cruz-Ramos, 987 F.3d at 40; Rodríguez-Torres, 939 F.3d at 40; Rivera-Carrasquillo, 933 F.3d at 49.

<u>Isla, Inc.</u>, 642 F.3d 28, 37 (1st Cir. 2011) (holding that because the "[p]art[y] pursuing appellate review" did not provide a transcript we need to perform our appellate function, that party could not "prevail on [an] issue" it sought to press). Either way, this aspect of his 404(b) complaint is not a difference-maker.

Rivera's next argument requires a little more context. After initial briefing and oral argument here, the Supreme Court issued <u>Ramos</u> v. <u>Louisiana</u>, 140 S. Ct. 1390 (2020) — a decision holding that the Constitution requires a unanimous verdict to convict a defendant of a serious offense. <u>Id.</u> at 1394, 1402. Hard on the heels of <u>Ramos</u>, Puerto Rico's appeals court vacated Rivera's conviction for illegally possessing the green and black pistol (along with the other convictions in that case) and remanded for a new trial. <u>See</u> <u>People</u> v. <u>Rivera Galíndez</u>, KLAN 201701085, 2020 WL 4741358 (P.R. Ct. of App. May 20, 2020) (certified translation provided by Rivera and on file with the First Circuit, at Docket No. 52) (noting that Puerto Rico's Supreme Court has "held that, in light of [<u>Ramos</u>], a conviction entered by way of a nonunanimous verdict in our jurisdiction transgresses the procedural safeguards inherent to the fundamental right to a trial by jury"). So we ordered supplemental briefing to address the following question:

> What impact (if any) does the <u>Ramos</u> decision
> and Appellant Rivera-Galíndez's vacated prior

conviction have on the challenged admissibility of the government's evidence at trial and any other issues raised on appeal before this Court?

Responding to our directive, Rivera argues that because "[t]he prior conviction was overturned" following the Supreme Court's recently issued Ramos opinion, it should play no role in the 404(b) analysis. To hear him tell it, "[t]he void conviction negates the validity of the documentary evidence of [his] prior bad acts," creates "serious doubt" as to "the validity of" the agent's testimony, and "constitute[s] a due process violation." Not true, writes the government, pointing to a Supreme Court case holding other-acts evidence admissible under 404(b) even though a jury had acquitted the defendant of that act, see Dowling v. United States, 493 U.S. 342, 348-49 (1990), and a sibling circuit case finding a prior conviction admissible under 404(b) even though an appellate court later reversed that conviction, see United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992).[9]

The government also notes (without contradiction) that Rivera never argued below that the other-acts evidence was inadmissible because of the nonunanimous verdict. Of course, "[t]o

---

[9] We ourselves have noted that "404(b) by its own terms is not limited to evidence of offenses resulting in convictions, as it refers to other crimes, wrongs, or acts." United States v. Arboleda, 929 F.2d 858, 867 (1st Cir. 1991) (quotation marks omitted).

preserve a claim, a litigant must" put it forward in the district court even if the law "is against him" at that time — or else he must show plain error.  See United States v. Acosta-Colón, 741 F.3d 179, 201 n.12 (1st Cir. 2013); see also United States v. Cotton, 535 U.S. 625, 628-29, 631-32 (2002); Johnson v. United States, 520 U.S. 461, 464 (1997).[10]  But by not even trying to make that showing, he waived this facet of his 404(b) challenge. See, e.g., Cruz-Ramos, 987 F.3d at 40; Rodríguez-Torres, 939 F.3d at 40; Rivera-Carrasquillo, 933 F.3d at 49.[11]

So despite what Rivera argues, the other-acts evidence had special relevance to the knowledge and intent issues in the

---

[10] That we requested supplemental briefs on Ramos does not excuse Rivera from having to show plain error.  A case in point is McLean.  There, like here, the Supreme Court issued an important opinion after oral argument before us — i.e., United States v. Booker, 543 U.S. 220 (2005), where the Supreme Court held that mandatory application of the federal sentencing guidelines infracted the Constitution.  So we ordered supplemental briefing on that case's impact.  409 F.3d at 504.  But because the appellant had not raised any point below that could have preserved the issue — e.g., he had not argued that the then-existing guideline regime offended the Constitution — he had to prove plain error.  Id. at 505.

[11] A couple more comments before turning to the unfair-prejudice prong of the admissibility test. One:  Given our ruling, we need not consider the many arguments in Rivera's supplemental brief for why the judge's decision was not harmless error.  Two: We need not consider his supplemental brief's claim that the judge imposed an "erroneous" sentence.  After all, our order limited the supplemental briefs to explaining what effect (if any) the Ramos decision and the vacating of his Puerto Rico conviction had on the "issues raised on appeal."  And Rivera raised no sentencing issues in his initial briefs.

case. And we can quickly dispose of his claim that the judge should have excluded the evidence as unfairly prejudicial under 403 (recall that even if specially relevant, the danger of unfair prejudice cannot substantially outweigh the evidence's probative value). As best we understand his prejudice theory, he argues that the judge's error in admitting the other-acts evidence caused him not "to testify because his credibility before the jury was damaged." But the premise of his argument is wrong — his bid to show error here fails under the applicable standards of review, as we just explained. His theory therefore has no force. See United States v. Sutton, 970 F.2d 1001, 1008 (1st Cir. 1992) (noting that "rare" is the "case in which we should attempt to refigure the trial court's assessment of the probative worth/prejudicial impact calculus"). And even if he thinks he raised other prejudice arguments, we would consider them "waived for lack of development." See Cruz-Ramos, 987 F.3d at 35 n.5; see also Págan-Lisboa v. Soc. Sec. Admin., 996 F.3d 1, 7 (1st Cir. 2021) (finding any supposed arguments "too skeletal or confusingly constructed[,] and thus waived" (quotation marks omitted)).

Enough said about the other-acts evidence.

*Codefendant's Statement*

The defense wanted to impeach an agent who testified at trial that Rivera had "the only keys . . . available at the time

- 18 -

. . . that opened" the apartment door.  And the defense wanted to do the impeaching by using the agent's report, which included a codefendant's claim that he (the codefendant) had purchased the lock and had a key for it.  The judge, however, sustained the government's objection on hearsay grounds.

The parties spend some time on the hearsay issue.  But it is enough for us to note that even if the judge erred in this respect (and we are not saying either way), the error was harmless.  As we wrote in the opening paragraph, constructive possession may be *joint* — it need not be exclusive, *i.e.*, two people can share constructive possession over something.  See, e.g., United States v. Hicks, 575 F.3d 130, 139 (1st Cir. 2009); see also United States v. Howard, 687 F.3d 13, 18 (1st Cir. 2012) (emphasizing that "[j]oint possession occurs when both the defendant and another person share power and intent to exercise dominion and control over contraband" (quotation marks omitted)).  And as the government notes (without any denial from Rivera), the codefendant's comment would have shown only that another person besides Rivera had a key to the apartment — not that the codefendant had *exclusive* control over the flat.  Which gives us "a high degree of assurance" that the judge's ruling made no difference to the verdict.  See United States v. Kilmartin, 944 F.3d 315, 339 (1st Cir. 2019), cert. denied, 140 S. Ct. 2658 (2020).  Hence our harmless-error holding.

*Rivera's Statement*

Rivera next faults the judge for excluding audio from part of the apartment-search video that caught him telling an agent that a key on his chain was for the car that the police had just searched. Acting on the government's motion *in limine*, the judge — over the defense's objection — ruled the statement inadmissible for hearsay reasons (the video came in, but the jurors did not hear the statement the defense wanted them to hear).

Trying to get us to reverse this ruling — he thinks the statement supports his the-police-set-me-up theory — Rivera argues that the judge had to admit the statement either under the excited-utterance or the business-record hearsay exceptions. The government disagrees. But we need not take sides on the parties' debate, and for a simple reason. Even if one key was for the car, another key was for the apartment (an agent successfully used a key to open the padlock, remember) — which linked him to the apartment, meaning he was not some mere bystander but rather a constructive possessor of the drugs and the gun given his "control over the area where the contraband [was] found." See, e.g., Tanco-Baez, 942 F.3d at 25 (quotation marks omitted). So we think it "highly probable" that the judge's decision did not influence the trial's outcome. See Kilmartin, 944 F.3d at 338. In other words, any error — and we do not intimate there was any — would be harmless

at worst.  And Rivera gives us no convincing reason that we are wrong (*e.g.*, he has not adequately developed an argument that the statement's exclusion affected his ability to present his theory about how the police brought his gun into the apartment).  See United States v. Henderson, 911 F.3d 32, 37 (1st Cir. 2018) (pointing out how the defendant had not "rebut[ted] the government's" harmless-error argument).

*Police's Work Plan*

The same goes for the judge's decision stopping the defense from asking an agent about a work plan her supervisor came up with for the search — a decision based principally on hearsay grounds, consistent with what the government had argued.

In Rivera's telling, the work plan "indicated" that the police expected two people at the apartment, neither of whom was him — which backed up his "defense" that he "was not in control of the apartment," or so he argues.  And, he continues, the judge had to admit the sought-after evidence either under the business-record or the existing-state-of-mind hearsay exceptions.  Unmoved, the government says the judge got the hearsay issue exactly right.  We decline to referee this hearsay fight too (so we can set aside the government's concern about whether Rivera did enough below to preserve his argument).  Suffice to say, his hoped-for evidence would have shown *not that* he had no control over the apartment *but*

- 21 -

*that* other people besides him also had control.[12]  So again, we possess the required level of confidence that the jury would in all likelihood have found him guilty had the fought-over evidence come in, making any error on this score (if error there was) harmless.  See id.

### Instructional Issues

We turn now to Rivera's issues with the jury instructions.  He first claims that the judge erred by instructing the jury that the mental state required for the gun-possession charge was "knowingly."  He then claims that the judge erred by telling the jury that "the intent element" for aiding-or-abetting liability "is satisfied if the defendant had advance knowledge of the facts that make the principal's conduct criminal," with "'[a]dvance knowledge' mean[ing] knowledge at a time the defendant can opt to walk away."  And he finally claims that the judge erred by instructing the jury "on actual possession . . . despite no evidence of actual possession in the record."  The government, for its part, sees nothing amounting to reversible error.

*Standard of Review*

--------

[12] The pined-for evidence also may have *potentially* shown that the police did not know about the evidence establishing Rivera's control until the warrant's execution — but even if true, that would be irrelevant to the jury's guilt-or-innocence determination.

Rivera concedes that he did not preserve these challenges below. So our review is at best limited to plain error. Again, a plain error is an error that is indisputable under current law that not only affected the defendant's substantial rights but also seriously endangers the judiciary's public reputation for fairness and integrity.[13] See, e.g., United States v. Takesian, 945 F.3d 553, 563 (1st Cir. 2019); Rivera-Carrasquillo, 933 F.3d at 48 n.14, 55.

*Gun Possession*

We can make quick work of Rivera's lead claim. The law books are full of First Circuit cases holding that knowingly is the requisite mental state for possessing a gun in furtherance of a drug crime. See, e.g., United States v. Bobadilla-Pagán, 747 F.3d 26, 35 (1st Cir. 2014); United States v. Bucci, 525 F.3d 116, 132 (1st Cir. 2008); United States v. Flecha-Maldonado, 373 F.3d 170, 179 (1st Cir. 2004). Rivera thinks these cases are wrongly decided. But they "bind[] district courts and, indeed, this panel." See In re TJX Cos. Retail Sec. Breach Litig., 564 F.3d 489, 501 (1st Cir. 2009). Which means the disputed gun-possession

_____

[13] The government also argues that Rivera intentionally relinquished these arguments below so that he cannot even challenge them as plain error. But we assume favorably to him that he did not.

instruction does not come "within a country mile of plain error." See United States v. Morosco, 822 F.3d 1, 21 (1st Cir. 2016).

*Aiding or Abetting*

Nor does the targeted aiding-and-abetting instruction. Consider the first complained-of part — that "the intent element . . . is satisfied if the defendant had advance knowledge of the facts that make the principal's conduct criminal." Our caselaw says (with "caveats" not at issue here) that "to establish criminal liability . . . for aiding and abetting criminal behavior, . . . the government need prove beyond a reasonable doubt that the putative aider and abettor knew the facts that make the principal's conduct criminal." United States v. Ford, 821 F.3d 63, 74 (1st Cir. 2016). Now consider the second complained-of part — that "'[a]dvance knowledge' means knowledge at a time the defendant can opt to walk away." Supreme Court caselaw indicates that "a defendant may be convicted of abetting" a firearms crime like Rivera's "only if his intent reaches beyond a simple drug sale, to an armed one" — which depends in part on whether he knew that a colleague had a gun, in time to "do something with" that knowledge, "most notably, opt to walk away." See Rosemond v. United States, 572 U.S. 65, 76, 78 (2014). The bottom line is that these parts jibe with controlling law. And "[s]o what [Rivera] offers is hardly the stuff of plain error." See Cruz-Ramos, 987 F.3d at 45.

- 24 -

*Actual Possession*

Rivera's actual-possession complaint, appearing in a passing sentence in the brief's summary of argument and then in a fleeting sentence in the brief's conclusion, is too inadequately developed to be meaningfully addressed. We thus deem it waived. See, e.g., Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## Final Words

For the reasons itemized above, we affirm the judgment entered below.