# United States Court of Appeals
## For the First Circuit

No. 21-1443

UNITED STATES OF AMERICA,

Appellee,

v.

STEVEN LESSARD, a/k/a Shawn,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Kayatta, Circuit Judges.

Mark W. Shea and Shea & LaRocque, LLP on brief for appellant.
John J. Farley, United States Attorney, and Seth R. Aframe,
Assistant United States Attorney, on brief for appellee.

May 23, 2022

**SELYA**, **Circuit Judge**. Defendant-appellant Steven Lessard challenges his 150-month prison sentence and seeks resentencing on the ground that the government breached his plea agreement (the Agreement). Specifically, he asserts that the government broke its promise to recommend a sentence at the low end of the applicable guideline range by asking the sentencing court to impose a "big sentence." Relatedly, he argues that this alleged breach defeats a waiver-of-appeal provision in the Agreement that seemingly blocks his path.

Whether the government's breach of a plea agreement voids a waiver-of-appeal provision within a plea agreement is a question of novel impression in this circuit. But we need not answer that novel question today: even if we assume, favorably to the defendant, that the waiver-of-appeal provision is inoperative in his case, the defendant's claim of breach fails. Consequently, we affirm the judgment below.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case. When — as in this case — a sentencing appeal follows a guilty plea, "[w]e draw the facts from the plea agreement, the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing." United States v. Almonte-Nuñez, 771 F.3d 84, 86 (1st Cir. 2014).

In March of 2017, Drug Enforcement Administration (DEA) agents identified a drug-trafficking organization that distributed fentanyl throughout the Merrimack Valley region (a part of which lies in New Hampshire and a part of which lies in Massachusetts). During the subsequent investigation, DEA agents conducted surveillance and (pursuant to a warrant) intercepted telephone calls. These intercepted calls included calls during the period from January 29 to March 14, 2018 between the defendant and Sergio Martinez (the leader of the drug-trafficking organization). The agents listened to calls in which Martinez and the defendant arranged deliveries of fentanyl to the defendant's apartment in Lawrence, Massachusetts.

On March 14, local police officers executed a search warrant for the defendant's apartment. Once inside, they found (among other things) more than 50 grams of fentanyl and over $2,000 in cash. In the basement of the building, the searchers recovered more than 2,000 grams of fentanyl and several firearms.

The following week, a federal grand jury sitting in the District of New Hampshire returned an indictment that charged the defendant (and others) with conspiracy to distribute and to possess with intent to distribute controlled substances. See 21 U.S.C. §§ 841, 846. Although three superseding indictments eventuated, the charge against the defendant remained constant. The defendant

initially maintained his innocence but — on the eve of trial — he reversed course and entered into the Agreement with the government.

Under the terms of the Agreement, the defendant agreed to plead guilty to the single charge against him. In consideration of his plea, the government agreed, as relevant here, to "recommend a sentence at the bottom of the applicable advisory guideline range." The Agreement contained a waiver-of-appeal provision, which stated that the defendant waived his "right to challenge his guilty plea and/or sentence on direct appeal" so long as the sentencing court imposed a sentence within or below the applicable guideline range.

The district court held the change-of-plea hearing on September 30, 2019. During the ensuing colloquy, the court confirmed that the defendant understood the rights that he was surrendering by pleading guilty. The court also reviewed with the defendant the terms of the waiver-of-appeal provision. After questioning the defendant regarding the voluntariness of his guilty plea, the court accepted the plea. In doing so, the court determined "that [the defendant] ha[d] entered the plea competently and voluntarily based on a full knowledge of the charges against him and the consequences of his plea."

The PSI Report was subsequently prepared. The probation officer recommended a total offense level (TOL) of 41 and a criminal history category (CHC) of III. These calculations yielded

a proposed guideline sentencing range of 360 months to life imprisonment.

At the disposition hearing, the district court first addressed six "disputed issues." Some of these issues comprised objections to the PSI Report. Among the other issues was "the defendant's request for a variance below the guideline sentencing range." After resolving some of the disputed issues, the district court lowered the TOL to 31 and confirmed the defendant's placement in CHC III. These revised calculations yielded a guideline sentencing range of 135 to 168 months of imprisonment. The court then heard arguments of counsel (including arguments for and against a downward variance) and the defendant's allocution.

The prosecutor began by stating that "[i]n accordance with the plea agreement, we recommend a sentence at the low end of the guidelines." Then — referring to the defendant's request for a downward variance — the prosecutor added that "[w]e are opposed to any variance in this case." The prosecutor proceeded to argue against a below-the-range sentence, stating that the defendant was "a recidivist drug dealer" who "was rocking and rolling in Lowell as a big-time drug dealer."[1] He observed that while the defendant was "not the biggest guy in this big federal case," he was "the biggest customer of the big guy." As such, the circumstances in

---

[1] Lowell is a Massachusetts city within the Merrimack Valley region.

the defendant's case "require[d] a big sentence."  The prosecutor concluded by stating that "consistent with our obligation in the plea agreement, we recommend a sentence in the guideline range."

Following the defendant's allocution, the court heard from defense counsel, who again requested a downwardly variant sentence.  The court responded that "a variance would be unjust" in the defendant's case because "none of [the] normal things that militate toward leniency except for the fact that [the defendant] served pretrial detention during COVID . . . is present here." Even so, the court observed that detention during the pandemic was "burdensome" and, as such, it required "a measure of leniency and mercy."  As a result, the court stated that it would forgo its "intention" to sentence the defendant "at the high end of the range."  When all was said and done, the court imposed a mid-range sentence:  a 150-month term of immurement.  In the process, the court analyzed each of the relevant sentencing factors.  See 18 U.S.C. § 3553(a).

This timely appeal ensued.

## II. ANALYSIS

The defendant's appeal begins — and ends — with his claim that the government breached the terms of the Agreement. Specifically, the defendant contends that the Agreement's waiver-of-appeal provision does not apply because the government breached

the Agreement and, thus, invalidated the waiver-of-appeal provision. This contention is unavailing.

To be sure, the defendant's line of argument has considerable grounding. After all, the government's breach of a plea agreement may be a ground for either resentencing or withdrawal of a guilty plea. See United States v. Gonczy, 357 F.3d 50, 52 (1st Cir. 2004); United States v. Clark, 55 F.3d 9, 14 (1st Cir. 1995); United States v. Canada, 960 F.2d 263, 271 (1st Cir. 1992). And we have said that "a waiver should [not] be construed to bar an appeal" of a sentence "that violates a material term of [a] plea agreement." United States v. Teeter, 257 F.3d 14, 25 n.10 (1st Cir. 2001); see Correale v. United States, 479 F.2d 944, 949 (1st Cir. 1973) (holding that prosecutor's failure to fulfill promise given in exchange for waiver of right to contest charges renders waiver ineffective). In addition, several courts of appeals have held that a waiver-of-appeal provision in a plea agreement is unenforceable when the government has breached that agreement. See, e.g., United States v. Gonzalez, 309 F.3d 882, 886 (5th Cir. 2002); United States v. Bowe, 257 F.3d 336, 342 (4th Cir. 2001); United States v. Gonzalez, 16 F.3d 985, 989-90 (9th Cir. 1993).

Whether a prosecutor's breach of a plea agreement negates a waiver-of-appeal provision in a plea agreement presents a question of first impression in this circuit. But it is a

- 7 -

question that we need not answer today. Cf. Privitera v. Curran (In re Curran), 855 F.3d 19, 22 (1st Cir. 2017) ("[C]ourts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures."). Even if we assume — favorably to the defendant — that the waiver-of-appeal provision may be invalidated by a breach of the Agreement, his appeal falters: there was no breach here.

In many cases, the question of whether the government breached the terms of a plea agreement is a question of law, engendering de novo review. See, e.g., Almonte-Nuñez, 771 F.3d at 89. But where, as here, the defendant fails to object to the purported breach in the court below, review is for plain error. See Puckett v. United States, 556 U.S. 129, 131, 143 (2009).

Plain error is "a formidable standard of appellate review." United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000). To prevail on plain-error review, the defendant must carry the devoir of persuasion as to four elements: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); see United States v. Olano, 507 U.S. 725, 732 (1993). The defendant cannot shoulder this heavy burden in the case at hand.

The foundational principles that govern this appeal are uncontroversial. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). "Because plea bargaining requires defendants to waive fundamental constitutional rights, we hold prosecutors engaging in plea bargaining to 'the most meticulous standards of both promise and performance.'" Clark, 55 F.3d at 12 (quoting Correale, 479 F.2d at 947). "Such standards require more than lip service to, or technical compliance with, the terms of a plea agreement." Almonte-Nuñez, 771 F.3d at 89. "[A] defendant is entitled . . . to the benefit of the bargain struck in the plea deal and to the good faith of the prosecutor." United States v. Matos-Quiñones, 456 F.3d 14, 24 (1st Cir. 2006) (internal quotation and citation omitted).

We have noted before that there is "[n]o magic formula" for assessing whether a prosecutor has fulfilled his obligation under the terms of a plea agreement to recommend a particular sentence. Gonczy, 357 F.3d at 54. When making this assessment, we must "consider the totality of the circumstances." Almonte-Nuñez, 771 F.3d at 91. The critical question is whether the prosecutor's "overall conduct [is] reasonably consistent with

- 9 -

making [the promised] recommendation, rather than the reverse." Canada, 960 F.2d at 269.

In answering this critical question, we remain mindful that the government's obligation to fulfill promises made in a plea agreement does not exist in isolation. See United States v. Colón-Rosario, 921 F.3d 306, 312 (1st Cir. 2019); Almonte-Nuñez, 771 F.3d at 90. The government, for example, has a "corollary duty to provide full and accurate information about the offense and the offender to the sentencing court." Almonte-Nuñez, 771 F.3d at 86. Moreover, when the plea agreement allows the government to advocate for a sentence that is stiffer than the sentence that defense counsel has proposed, the government "ha[s] a right (indeed, a duty) to explain to the court why the higher sentence that it [i]s urging [i]s more appropriate." United States v. Montañez-Quiñones, 911 F.3d 59, 65 (1st Cir. 2018). The obverse is also true: the government has a right to explain to the court why a sentence that the prosecutor had not agreed to recommend is inappropriate. See id. And in either event, "the government is not constrained to pull its punches." Id.

In this case, neither party disputes that the government agreed to recommend a sentence at the bottom of the applicable guideline range. The defendant strives to persuade us, though, that the government attempted an end run around its obligation by giving lip service to its promise — recommending a sentence at the

low end of the guideline range — and then "vigorously advocating for 'a big sentence.'" We are not convinced.

Although it is true that the prosecutor stated that the defendant's offense warranted a "big sentence," the defendant glosses over the context in which this statement was made. Context matters, see Saxena, 229 F.3d at 7-8; Canada, 960 F.2d at 269-70, and the key component of the context here is that the defendant argued, in his sentencing memorandum, for a downwardly variant sentence. What is more, the court expressly acknowledged this request early in the disposition hearing. Subsequently — when asked for his sentencing recommendation — the prosecutor complied with his obligation under the Agreement by telling the court that he recommended "a sentence at the low end of the guidelines." He then proceeded to argue in "oppos[ition] to any variance," explaining why the defendant's criminal history and the offense of conviction made a downwardly variant sentence inappropriate. He concluded this portion of his argument by stating that the defendant's conduct "require[d] a big sentence. And so, consistent with our obligation in the plea agreement, we recommend a sentence in the guideline range."[2]

_____

[2] Taken in a vacuum, this last sentence might be problematic. In context, however, we are satisfied that it was merely another way of expressing the prosecutor's view that the district court should not grant a downwardly variant sentence. And at any rate, a sentence at the bottom of the applicable range of 135 to 168 months is certainly a "big sentence."

Seen in this light, the prosecutor's statement that the offense of conviction "require[d] a big sentence" was simply an expression of his view that a downwardly variant sentence would be inappropriate. Nothing in the Agreement operated to muzzle such an argument. Consequently, we conclude that, under the demanding plain-error standard, the defendant has failed to show that the prosecutor's "overall conduct" was other than "reasonably consistent with making [the promised] recommendation." Canada, 960 F.2d at 269.

Our precedent strongly supports this conclusion. We have refused to find a breach of a plea agreement in analogous circumstances. In Almonte-Nuñez, for example, the government agreed to recommend a sentence at the high end of the applicable guideline range and not to argue for upward offense-level adjustments. 771 F.3d at 86. At the disposition hearing — in response to defense counsel's request for a more lenient sentence — the prosecutor "referenced the seriousness of the offenses, the various aggravating factors, and the need for deterrence." Id. at 87. The defendant appealed the ensuing sentence, contending that the prosecutor had breached the plea agreement by making statements that allegedly supported additional guideline enhancements. See id. at 89. Reviewing for plain error, we rejected that contention and held that the prosecutor did not breach the plea agreement merely by "emphasizing facts that made a sentence at the low end

of [the guideline range] inappropriate." Id. at 91. The prosecutor's conduct, we concluded, was "within fair territory." Id. The same is true here: the prosecutor's argument in opposition to a downwardly variant sentence constituted permissible advocacy consistent with the Agreement.

The defendant has a fallback position. He argues — albeit in conclusory fashion — that the prosecutor breached the Agreement "[b]y failing to advocate for a low-end sentence" and "never explain[ing] why a low-end guideline sentence was appropriate." Here, however, the Agreement imposed no affirmative obligation of either advocacy or explication on the prosecutor but, rather, imposed an obligation to recommend a low-end guideline sentence. The prosecutor fulfilled that obligation.[3] And as we have said, "a prosecutor is not obliged to present an agreed recommendation either with ruffles and flourishes or 'with any particular degree of enthusiasm.'" Montañez-Quiñones, 911 F.3d at 65 (quoting Canada, 960 F.2d at 270).

To say more would be to paint the lily. On plain-error review, we cannot say that the prosecutor breached either the letter or the spirit of the Agreement merely by highlighting facts

---

[3] The defendant gestures at an argument that the government's commitment to "recommend a sentence at the bottom of the applicable advisory guideline range" required it to ask explicitly for a 135-month prison sentence. This argument is undeveloped and, therefore, we deem it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 13 -

that made a downwardly variant sentence inappropriate.  The upshot, then, is that there was no breach of the Agreement.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment below must be

**<u>Affirmed</u>**.