# United States Court of Appeals
## For the First Circuit

No. 22-1422

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN CARLOS APONTE-COLÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo, Hamilton,[*] and Rikelman,
Circuit Judges.

Jessica E. Earl, Assistant Federal Public Defender, with whom
Eric Alexander Vos, Federal Public Defender, Rachel Brill, Federal
Public Defender, and Franco L. Pérez-Redondo, Assistant Federal
Public Defender, Supervisor, Appeals Section, were on brief, for
appellant.

Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

---

[*] Of the Seventh Circuit, sitting by designation.

June 17, 2024

**RIKELMAN**, <u>Circuit Judge</u>. Jean Carlos Aponte-Colón ("Aponte") challenges the district court's decision to sentence him to a term of imprisonment that is substantially longer than the range recommended by the U.S. Sentencing Guidelines. The court's sentence followed Aponte's guilty plea to possessing with intent to distribute marijuana and possessing a firearm in furtherance of a drug trafficking crime. Under his plea agreement with the government, Aponte committed to request an upwardly variant sentence on the firearm charge because of, in his own words, the "nature and quantity of evidence seized" during his arrest. Although Aponte requested an aggregate imprisonment sentence of ninety-four months, and the government requested 100 months, the district court ultimately sentenced him to an even higher upwardly variant sentence of 120 months. On appeal, Aponte presents three arguments: (1) the government materially breached the plea agreement; (2) the district court improperly based its sentence on Aponte's national origin (or, at least, a reasonable observer could infer the court did); and (3) the district court's sentence was procedurally unreasonable. We conclude that the law and the record here do not support Aponte's arguments and affirm.

## I. BACKGROUND

### A. The Relevant Facts[1]

In April 2021, Puerto Rico police officers responded to a report of a single-car accident in Humacao. When the officers discovered that the car in the accident had been "flagged as disappeared," they arrested the driver, Aponte. From the car, the officers seized numerous items, including: four plastic containers and three zip lock bags, each containing marijuana; twenty-nine foil decks of heroin; fifty-one pills;[2] five ledgers; one address book; two pocketknives; three cellphones; one digital scale; one plastic bag with drug paraphernalia; $1,146 in cash; one AK-style pistol with no visible serial number; 123 rounds of 7.62 caliber ammunition; two rifle magazines, each with an ammunition capacity of thirty rounds; two rifle drum magazines; three extended-capacity rifle magazines; and two .40 caliber pistol magazines with a total ammunition capacity of twenty-nine rounds.

---

[1] Because Aponte pleaded guilty, we draw these facts from the change-of-plea colloquy, the transcript of the sentencing hearing, and the undisputed portions of the revised presentence investigation report. See United States v. Walker, 89 F.4th 173, 177 n.1 (1st Cir. 2023).

[2] The total net weight of the marijuana and heroin was, respectively, 9.364 grams and 2.69 grams. The pills were not analyzed.

## B. The Indictment and Plea Agreement

Less than two weeks after his arrest, a grand jury indicted Aponte on six counts: possession of a machinegun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (count one); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count two); possession with intent to distribute heroin in violation of 21 U.S.C. § 841 (count three); possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 (count four); possession of a machinegun in violation of 18 U.S.C. § 922(o) (count five); and possession of a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1) (count six). The AK-style pistol seized from Aponte's car formed the basis of each of the firearm charges, and the indictment identified it as a machinegun:[3] "a firearm modified to shoot automatically more than [one] shot, without manual reloading, by a single function of the trigger."

In February 2022, Aponte pleaded guilty to counts two and four pursuant to a plea agreement with the government. The parties agreed that the following calculations would apply under the U.S.

---

[3] Specifically, counts one and five described the AK-style pistol as a machinegun. Count two, to which Aponte ultimately pleaded guilty, described the underlying firearm more generally: an "AK-47 style pistol, serial number not visible." Still, Aponte never contested that the firearm underlying count two was a machinegun.

Sentencing Guidelines: for count two, the firearm charge, sixty months of imprisonment;[4] and, for count four, the drug charge, between ten and sixteen months,[5] if the court placed Aponte in criminal history category III.[6] They also agreed to request an upwardly variant, eighty-four-month sentence for the firearm charge (two years higher than the guideline sentence) and a sentence within the guideline range for the drug charge. Specifically, they committed to the following terms in the plea agreement:

> As to Count Two, the parties agree that the parties will request a sentence of imprisonment of 84 months, which will run consecutive to all other counts. As to Count Four, after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties will jointly request a sentence of imprisonment within the applicable Guidelines range at a total offense level of 10 (i.e.,

[4] The guideline sentence for possession of a firearm in furtherance of a drug trafficking crime is the statutory minimum sentence: sixty months' imprisonment. See U.S.S.G. § 2K2.4(b) (providing that the guideline sentence for a violation of 18 U.S.C. § 924(c) "is the minimum term of imprisonment required by statute"); 18 U.S.C. § 924(c)(1)(A)(i).

[5] For the drug charge, the parties stipulated to a base offense level of twelve. Factoring in a two-point reduction for Aponte's acceptance of responsibility, the parties agreed to a total adjusted offense level of ten.

[6] The probation officer similarly determined that the guideline sentence for the firearm charge was sixty months and that the guideline range for the drug charge was, based on a total offense level of ten and a criminal history category of III, between ten and sixteen months. The parties did not stipulate as to Aponte's criminal history category and instead listed what the recommended sentencing range would be for each possible category.

> defendant may request the lower end of the Guidelines, while the government may request the upper end of the Guidelines), when combined with the criminal history category as determined by the [district c]ourt.
>
> The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

The government also agreed to dismiss the remaining counts (one, three, five, and six) at sentencing.

### C. The Parties' Sentencing Memoranda

In May 2022, the parties each filed a sentencing memorandum with the district court. Consistent with the plea agreement, both parties requested a sentence of eighty-four months' imprisonment for the firearm charge (count two). As for the drug charge (count four), Aponte requested ten months, and the government requested sixteen months. (Thus, as an aggregate sentence, Aponte sought ninety-four months, and the government sought 100 months.) The parties also requested a supervised release term of five years.

In his memorandum, Aponte described his long struggle with substance abuse and how it fueled his drug trafficking; expressed remorse and a desire to rehabilitate himself, reconnect with his family, and continue his career as a chef; and noted that he had been sober for more than a year. He then turned to addressing the parties' plea agreement and explaining his

sentencing request. In doing so, he noted: "We are aware of the evidence seized, which include[d] an AK pistol and a great quantity of extended magazines and ammunition. However, notwithstanding a guideline imprisonment range of 60 months as for Count Two (2), the parties are jointly requesting an upward[ly] varian[t] sentence of 84 months of imprisonment." The "24-month enhancement," he explained, "consider[ed] the nature and quantity of [the] evidence seized." He added that his possession of "an AK pistol, along with all the ammunition and controlled substances, highlighted by the fact he was driving under the influence, is not something he [took] lightly."

The government, for its part, explained that its "memorandum [was] intended to fulfill [its] co-existing obligations, under which it must, on the one hand, fulfill the terms of a plea agreement and, on the other hand, provide all relevant information to a sentencing court to enable it to impose a just sentence." In fulfilling such obligations, the government continued, it "need not 'sugarcoat the facts.'" (Quoting United States v. Almonte-Núñez, 771 F.3d 84, 91 (1st Cir. 2014).) Turning to the underlying offense conduct, the government summarized and (like Aponte) included a photo of some of the evidence seized from Aponte's car. The government then outlined Aponte's background, including his mental health history and two prior convictions for state "theft-related crimes," the relevant guideline calculations,

- 8 -

and the "social context in Puerto Rico." In its discussion of the "community-based factors," the government highlighted "the problem of gun violence in Puerto Rico" and detailed statistical data that it alleged demonstrated "a tidal wave of armed violent crime," including homicides. For example, the government noted that, in 2018 and 2019, Puerto Rico "had [a] highe[r] proportion of firearm related homicides than any other state or territory." The government also explained that, although Puerto Rico's homicide rate significantly decreased in 2020 (when "Puerto Rico faced prolonged quarantine"), 2020 "was still a bad year by almost any metric" and, in 2021, the number of homicides increased by nearly twenty percent from the prior year. Of its twelve-page memorandum, the government devoted about four pages to violent crime statistics in Puerto Rico, although it never alleged that Aponte had engaged in any violent crime. To sum up Aponte's offense conduct and the violent crime data, the government explained that "[t]he circumstances of [Aponte's] offense[s], when viewed through the violent social context in Puerto Rico, counsel[ed] for a sentence of imprisonment of 100 months."

The government then addressed how its requested sentence would serve the "need for adequate deterrence," claiming that "[h]igher sentences for gun-related offenses have a deterren[t] effect." (Citing United States v. Martinez, 184 F. Supp. 3d 1209, 1238 (D.N.M. 2016) ("[R]esearch strongly indicates that increases

in sentence length have at least some general deterrent effect -- especially for criminals facing shorter sentences."), aff'd, 660 F. App'x 659 (10th Cir. 2016).) The government concluded that "Puerto Rico's chronic and acute problem with firearms and violence, . . . coupled with [Aponte]'s criminal history and the nature of the crime (possession of a loaded firearm in furtherance of a drug trafficking crime), justif[ied] a sentence of imprisonment of 100 months to deter [him] and others from committing similar offenses."

Finally, in addressing the "need to protect the public," the government cited two studies by the U.S. Sentencing Commission, one that found firearms offenders recidivate "at a higher rate" and "more quickly" than non-firearms offenders[7] and another that found "[v]iolent offenders recidivate[] at a higher rate than non-violent offenders."[8] The government concluded that "[t]he fact

---

[7] See U.S. Sent'g Comm'n, Recidivism Among Federal Firearms Offenders 4 (2019), https://perma.cc/YXV9-BA9Z. This study looked at "firearms and non-firearms offenders . . . [who] were originally sentenced between fiscal year 1990 and the first quarter of fiscal year 2006" and "were released from federal custody in calendar year 2005." Id. at 3. Among the types of "firearms offenders" studied were those convicted of "possessing a firearm in furtherance of, a 'crime of violence' or 'drug trafficking crime'" in violation of 18 U.S.C. § 924(c), the firearm charge to which Aponte pleaded guilty. See id. at 2. The study concluded that "[s]ection 924(c) offenders generally recidivated less frequently . . . than other firearms offenders." See id. at 4.

[8] See U.S. Sent'g Comm'n, Recidivism of Federal Violent Offenders Released in 2010 5 (2022), https://perma.cc/LLB8-RQNZ.

- 10 -

that [Aponte] ha[d] been previously incarcerated, the high rate of recidivism among firearm and violent offenders, and the circumstances surrounding the commission of the instant offense[s] support[ed] . . . a sentence of 100 months to protect the community from future offenses by [him]."

Aponte moved to strike the government's sentencing memorandum, claiming that the government had breached the parties' plea agreement. He argued that the government had "only pa[id] lip service to the agreed imprisonment range, while implicitly encouraging [the district c]ourt to impose an upward variance with 'social context' arguments" that were rife "with homicide and murder rates not connected to [him] or his conduct." The district court denied the motion in a brief order: "DENIED. See U.S. v. Mojica-Ramos, No. 20-374, 22 WL 374-284 (D.P.R. Feb. 8, 2022) (Besosa, J.) (No breach of a plea agreement when the government identifies evidence that it indicates supports the sentence it endorses.)."

---

This study evaluated violent offenders who were sentenced between 1990 and 2010, see id. at 4, and "released from incarceration or sentenced to a term of probation in 2010," id. at 2. The Commission categorized these offenders as either: (1) "Violent Instant Offenders: Federal offenders who engaged in violent criminal conduct as part of their instant federal offense"; or (2) "Violent Prior Offenders: Federal offenders who had been arrested for a violent offense in their past but were not categorized as violent offenders based on their instant federal offense." Id. at 3.

## D. The Sentencing Hearing

On May 9, 2022, Aponte appeared before the district court for sentencing and reiterated his request for a sentence of ninety-four months of imprisonment and five years of supervised release. In advocating for his requested sentence, Aponte acknowledged that the court "does not take lightly . . . the type of firearm[ and amount of] ammunition that was seized." And in light of the firearm, ammunition, and controlled substances involved, Aponte continued, a ninety-four-month sentence would be "sufficient." The government, for its part, stated that it stood "by the recommendation made in the plea agreement" and requested "a total of 100 months of imprisonment, plus [a] 5-year term of supervised release." Moving on to the underlying facts of Aponte's offense conduct, the government noted that, when police searched Aponte's car after his accident, "they found marijuana, [an] AK-style pistol without a serial number, ammunition, several high-capacity magazines, drum magazines, ledgers, pocketknives, cellphones, drug paraphernalia, and U.S. currency, among other items." The government then added: "And so after discussions with counsel and calculating the guidelines, [it] does stand by the recommendation made in the plea agreement and would respectfully request a sentence of imprisonment of 100 months for Counts 2 and 4, plus the 5-year term of supervised release . . . ."

After Aponte's allocution, the district court calculated his guideline sentence: for the firearm charge, sixty months of imprisonment and two to five years of supervised release; and for the drug charge, based on a category III criminal history,[9] ten to sixteen months of imprisonment and two to three years of supervised release. The court then noted that it had "considered the other sentencing factors set forth in Title 18 United States Code Section 3553(a), the presentence investigation report, counsel's and the prosecutor's arguments, and Mr. Aponte's" statements. Additionally, the court noted Aponte's age, education, prior drug use, and "history of mental health issues." Acknowledging the parties' requested sentences, the court explained that it had "identified factors . . . that warrant[ed] a [higher] variant sentence." The court elaborated as follows:

> The Court has considered that Mr. Aponte was in possession of one AK-style assault pistol, 123 rounds of 7.62 ammunition for assault weapons used by NATO country military forces, 2 high-capacity rifle magazines of 30 rounds each, 2 rifle high-capacity drum magazines, . . . 3 additional extended-capacity rifle magazines, controlled substances and paraphernalia associated with distribution of controlled substances, including 3 Ziploc bags containing marijuana, 4 plastic oval containers containing marijuana, 29 red foil decks of heroin, 51 pills, 5 ledgers, 1 brown address book, 2 pocket knives, 1 black Samsung Galaxy

---

[9] The district court placed Aponte in criminal history category III based on his two prior convictions. Aponte does not challenge this determination on appeal.

cellphone, 1 BLU cellphone, 1 Azumi cellphone, 1 Apple iPad, 1 digital scale, United States currency in the amount of $1,146, 1 bill of Columbian currency of 20 pesos.

Concluding that "neither sentence recommended reflect[ed] the seriousness of the offenses, promote[d] respect for the law, protect[ed] the public from additional crimes by Mr. Aponte, . . . [or] address[ed] the issues of deterrence and punishment," the court sentenced Aponte to ninety-six months of imprisonment for the firearm charge and twenty-four months for the drug charge, to be served consecutively, for an aggregate sentence of 120 months. With respect to supervised release, the court sentenced Aponte to a term of five years for the firearm charge and three years for the drug charge, to be served concurrently.

After the court issued its sentence, Aponte objected "to the substantive and procedural unreasonableness of the sentence." He reiterated that "the guideline range in this case" was an aggregate "70 to 76 months" and that, based on the guidelines and "the evidence that was seized, the ammunition and the drugs, the parties agreed already [to] an upward variance" of two years above the guideline sentence on the firearm charge. The court's addition of another year on the firearm charge and eight additional months on the drug charge, amounting to a total of about four years above the aggregate guideline range, Aponte continued, constituted "a drastic enhancement" that was unsupported by the record.

- 14 -

In response, the court stated that its sentence demonstrated its disagreement with the parties' plea agreement, adding that it had also "taken into consideration the serious and acute problem[] of gun violence in Puerto Rico." The court continued:

> The Sentencing Commission's statistics bear that out. Higher sentences for gun-related offenses do have a deterrent effect. Increased sentences for gun-related offenses decrease gun violence. The Sentencing Commission statistics demonstrate that firearms offenders, of which Mr. Aponte is one, recidivate at a higher rate and more quickly than non-firearms offenders in every criminal history category. This high rate of recidivism among firearms offenders is another reason . . . [that] supports the imposition of . . . the sentence . . . imposed to protect the community from additional offenses by Mr. Aponte.

At the end of the hearing, and as the parties contemplated in the plea agreement, the court dismissed the remaining counts of the indictment. This timely appeal followed.

## II. DISCUSSION

Aponte presents three arguments on appeal: (1) the government materially breached the plea agreement by supporting its sentencing recommendation with unreliable, irrelevant information about the pervasiveness of firearm violence in Puerto Rico; (2) the district court based its sentencing decision on Aponte's national origin (or, at least, a reasonable observer could infer the court did) and therefore violated proper sentencing

procedure and Aponte's constitutional rights; and (3) the court's upward variance is procedurally unreasonable because the court failed to adequately "explain and individualize its sentence" and based the sentence on "unreliable assertions." We address each of these claims in turn.

## A. Whether the Government Breached the Plea Agreement

Aponte's first argument is that the government paid lip service to the plea agreement by requesting a 100-month aggregate sentence but then methodically undermined that recommendation in its sentencing memorandum. His breach argument focuses on the government's discussion of violent crime statistics, including those related to homicides, even though Aponte's charged conduct did not involve any violence, nor did his criminal history include a conviction for any violent crime. As part of this argument, Aponte faults the government for "suppl[ying] the [district] court with material [such as firearm homicide statistics] that the court regularly uses to exceed prescribed guidelines ranges and parties' stated recommendations."

We briefly address the applicable standard of review before turning to the merits of Aponte's claim. When a defendant has preserved the claim that the government breached a plea agreement, our review is de novo. United States v. Davis, 923 F.3d 228, 236 (1st Cir. 2019). But when a defendant fails to raise such a claim at the sentencing hearing, our review is for plain

error.  Id.  Here, Aponte argued in his motion to strike the government's sentencing memorandum that the government had breached the plea agreement, and the district court considered and denied that motion prior to the sentencing hearing.  Although Aponte did not renew his objection at the hearing itself, the parties agree that de novo review applies.  We assume in Aponte's favor that his claim is subject to de novo review but, for the reasons below, conclude that the government did not materially breach the plea agreement.

We begin by reviewing the principles that guide our evaluation of the terms and performance of a plea agreement. Because a defendant waives his "fundamental constitutional rights" by entering into a plea agreement with a prosecutor, we hold the prosecutor "to 'the most meticulous standards of both promise and performance.'"  United States v. Lessard, 35 F.4th 37, 42 (1st Cir. 2022) (quoting United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995)).  The prosecutor cannot satisfy such standards merely by paying lip service to, or technically complying with, the plea agreement.  United States v. Ubiles-Rosario, 867 F.3d 277, 283 (1st Cir. 2017).  "In addition to entitlement to the government's technical compliance with the agreement, [a defendant] is entitled to the 'benefit of the bargain' and the 'good faith' of the prosecutor." United States v. Brown, 31 F.4th 39, 50 (1st Cir. 2022) (quoting Ubiles-Rosario, 867 F.3d at 283).  Thus, "[w]e

- 17 -

prohibit not only explicit repudiation of the government's [plea-bargain] assurances but also end-runs around those assurances." United States v. Cruz-Vázquez, 841 F.3d 546, 548 (1st Cir. 2016). And because there is "'[n]o magic formula' for assessing whether a prosecutor has complied with a sentencing recommendation in a plea agreement[,] . . . we examine the totality of the circumstances to determine whether 'the prosecutor's overall conduct [was] . . . reasonably consistent with making such a recommendation, rather than the reverse.'" Ubiles-Rosario, 867 F.3d at 283 (first alteration in original) (quoting United States v. Gonczy, 357 F.3d 50, 54 (1st Cir. 2004)).

After considering the totality of the circumstances, including the terms of the plea agreement here, we find no breach. Recall that the parties agreed to request an upwardly variant sentence on the firearm charge (seven years as compared to the five-year guideline sentence) and, if the court assigned Aponte to criminal history category III, between ten and sixteen months on the drug charge. The government in fact requested, in both its sentencing memorandum (several times) and at the sentencing hearing (twice), a sentence of seven years' imprisonment on the firearm charge and sixteen months' imprisonment on the drug charge. The record below demonstrates that "[t]he government did not lament the plea agreement's terms or otherwise suggest that it would seek a different sentence if free to do so." United States v.

Irizarry-Rosario, 903 F.3d 151, 154 (1st Cir. 2018); cf. United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992) (finding breach of plea agreement where prosecutor's "references to the agreement were grudging and apologetic").

Nor did the government "gratuitously offer[] added detail garbed in implicit advocacy." United States v. Miranda-Martinez, 790 F.3d 270, 275 (1st Cir. 2015); cf. Gonczy, 357 F.3d at 53-54 (finding breach of plea agreement where prosecutor first recommended sentence in accordance with the agreement but then stated "defendant was the brains behind [the] operation," "his conduct ruined many lives," he "basically laughed in the face of law enforcement," and he "at a minimum deserves what the guidelines provide for and those are his just des[s]erts" (internal quotation marks omitted)). The government in no way denigrated Aponte in its memorandum when it recounted his personal background and criminal history. It described in neutral terms his "good upbringing," struggle with substance abuse, and two previous state convictions for "theft-related crimes," citing to the presentence investigation report for further details on those convictions.

Further, because the parties' agreement envisioned that both sides would advocate for a substantial upward variance on the firearm charge, the government "was free to offer reasons supporting its recommendation." Ubiles-Rosario, 867 F.3d at 287

- 19 -

(quoting Cruz-Vázquez, 841 F.3d at 549). Additionally, the plea agreement did not "limit the information that the prosecutor [could] convey." Miranda-Martinez, 790 F.3d at 275. Thus, the government was free to discuss "the characteristics of the community in which the crime[s] took place," which we have permitted district courts to consider "when weighing the offense's seriousness and the need for deterrence." United States v. Zapata-Vázquez, 778 F.3d 21, 23 (1st Cir. 2015); see United States v. Rivera–González, 776 F.3d 45, 50-51 (1st Cir. 2015) (finding "the high incidence of violent crime in Puerto Rico" to be an appropriate consideration at sentencing).

Aponte nevertheless objects that the government's decision to devote a third of its sentencing memorandum to statistical data on violent crime in Puerto Rico was an end-run around the plea agreement and an attempt to induce the district court to impose an even higher sentence. As Aponte correctly points out, his offense conduct in this case did not involve a violent crime, much less murder, and he had no previous convictions for violent crimes. But, critically for the outcome of this case, the government never suggested to the contrary before the district court. Instead, the government explained in its sentencing memorandum that the firearm violence in Puerto Rico, "when coupled with [Aponte]'s criminal history and the nature of the crime (possession of a loaded firearm in furtherance of a drug

- 20 -

trafficking crime), justif[ied] a sentence of imprisonment of 100 months to deter [him] and others from committing similar offenses." We find no support in this statement, or others made by the government, for Aponte's suggestion that the government implicitly urged the court to impose a higher variance than that contemplated by the parties.[10] Put differently, the mere discussion by the government of gun violence given the facts here, which involved Aponte's driving under the influence with a loaded gun and an agreement by the parties to advocate for an upwardly variant sentence, was not enough to breach the plea agreement.[11]

Aponte also contends that the government "intense[ly] focus[ed] on [his] arrest and every last piece of contraband seized," "call[ing] special attention to the ugliest aspects of [his] past to justify what is, in these circumstances, a routine recommendation." (Quoting United States v. Heredia, 768 F.3d 1220, 1237 (9th Cir. 2014).) Again, given the facts here, we disagree.

_____

[10] Aponte also argues that the government-cited statistics are of questionable "reliability and methodology" and "misleading, as they compare Puerto Rico, a territory with a much higher poverty rate than any state, to the United States as a whole." But these assertions are not enough to establish a breach of the plea agreement, given that Aponte does not support them with any authority.

[11] To be sure, a district court may not "focus[] 'too much on the community and too little on the individual' in imposing a sentence." Rivera-González, 776 F.3d at 50. But the government is entitled to bring such factors to the court's attention to help inform its sentencing decision.

To start, the parties' agreement that the sheer amount of contraband in this case warranted an upward variance on the firearm charge undermines Aponte's characterization of their sentencing recommendations as "routine." Additionally, the government dedicated two pages, out of its twelve-page sentencing memorandum, to note the details of Aponte's arrest and some of the evidence seized. The government described the evidence in a neutral fashion without any editorializing. Moreover, the parties' stipulation of facts attached to the plea agreement, as well as the presentence investigation report, listed each piece of evidence seized. The government therefore did not call any "special attention" to the circumstances of Aponte's offenses. Regardless, the government was entitled to describe the evidence seized, which was undisputed, in justifying its request for an upward variance.

Finally, we address and reject Aponte's argument that his case is just like United States v. Mojica-Ramos, Nos. 22-1204, 22-1205, 2024 WL 2858758 (1st Cir. June 6, 2024).[12] In that case, Aponte suggests, the government submitted a similar sentencing memorandum to secure an upwardly variant sentence (and therefore committed a similar breach of a plea agreement).

---

[12] That appeal was still pending when Aponte prepared his briefing, but he nevertheless argued that the government there breached the plea agreement in a similar manner to how it purportedly breached the plea agreement in his case.

We find the circumstances in Mojica-Ramos to be distinguishable. Importantly, unlike here, the government in Mojica-Ramos had agreed to recommend a within-the-guidelines sentence, and thus we analyzed whether its arguments to the district court were consistent with its promise to advocate for a mine-run sentence. See id. at *4-5. We concluded that they were not and that the government had "made several serious and unacceptable missteps" in its arguments to the court. Id. at *5. First, in its sentencing memorandum, the government argued "that the offense and Mojica's dangerousness 'should be considered exceptional'" and therefore affirmatively suggested that Mojica's case fell "outside the guidelines' heartland" and warranted "greater punishment than it had promised" in the plea agreement. Id. at *4-5. Similarly, at "the sentencing hearing, the government referred to Mojica's conduct as 'a big part of the problem' of violent crime in Puerto Rico," id. at *5, even though Mojica's offense conduct did not involve a violent crime, and he had not been charged with a violent crime, see id. at *1. Second, "the government presented the court with approximately 250 photos of firearms and drugs and an unanalyzed video of an individual 'resembling' Mojica to offer 'additional evidence' of his 'likely' participation in 'other criminal behavior beyond the machinegun count charged,'" id. at *4, even though it failed to provide any evidence that the photos or video actually depicted criminal

- 23 -

conduct, much less by Mojica, see id. at *6. Here, by contrast, the plea agreement permitted the government to treat Aponte's firearm offense as falling outside the guidelines' heartland. And although the government generally discussed the prevalence of firearm violence in Puerto Rico, it did not insinuate that Aponte's conduct was itself violent or played a "big part" in such violence. Moreover, the government introduced a single photo of the evidence seized from Aponte's car and never suggested that he participated in uncharged, unproven criminal conduct.

In sum, we conclude that Aponte received the benefit of his bargain with the government and that "the government was permitted to marshal the facts and factors that, in its view, warranted the recommended sentence." Ubiles-Rosario, 867 F.3d at 289. We therefore discern no breach of the plea agreement based on the record before us.

## B. Whether the District Court Based Its Sentence on Aponte's National Origin

Aponte's second argument on appeal is that the court's focus on "the Puerto Rico community amounted to a sentence based on an invidious factor," in violation of his constitutional rights and proper sentencing procedure, "or at the very least leaves the appearance of being based on an improper factor." Although he further suggests that "[t]he court's sentence would leave a reasonable observer with the impression that it was based

on . . . [his] membership in Puerto Rico society, . . . ethnicity, national origin, race, and economic status," Aponte develops an argument only on his "national origin" as the "invidious" or "improper" factor at issue. Thus, we focus our analysis on whether the district court based its sentence on Aponte's national origin.

Before we proceed to the merits of this claim, we note that the parties dispute the applicable standard of review. But we do not dwell on this dispute because we conclude that Aponte's claim fails even if we grant him the benefit of de novo review. See United States v. Albaadani, 863 F.3d 496, 504 (6th Cir. 2017) ("Whether a district court improperly considers a defendant's national origin is a question of law, and thus this aspect of a sentencing is reviewed de novo." (quoting United States v. Carreto, 583 F.3d 152, 159 (2d Cir. 2009))); see also United States v. Madsen, 809 F.3d 712, 719 n.2 (1st Cir. 2016) ("bypass[ing]" government's argument "that some aspects of the defendant's claims of sentencing error should be reviewed only for plain error . . . because, regardless of the standard of review, the claims are bereft of merit").

Because an individual's national origin is not a relevant sentencing factor, a district court may not base its sentencing decision on it. See United States v. Heindenstrom, 946 F.3d 57, 63 (1st Cir. 2019); see also U.S.S.G. § 5H1.10 (providing that race, sex, national origin, creed, religion, and

socioeconomic status "are not relevant" sentencing factors); United States v. Onwuemene, 933 F.2d 650, 651 (8th Cir. 1991) ("[S]entencing an offender on the basis of factors such as race, national origin, or alienage violates the Constitution."). And "even the appearance that the sentence reflects a defendant's . . . nationality will ordinarily require a remand for resentencing." United States v. Kaba, 480 F.3d 152, 156 (2d Cir. 2007) (citation omitted); see Albaadani, 863 F.3d at 504 (explaining that "[p]roof of actual bias . . . is not necessary" to warrant remand for resentencing). Here, Aponte argues that the court relied on his nationality when crafting his sentence, or at least a reasonable observer could infer that it did, because the court "assured the parties that it had 'taken into consideration the serious and acute problems of gun violence in Puerto Rico' in imposing the upward variance." Aponte also notes (although the court never did) that he "is a Hispanic man born in Puerto Rico" who "has lived his entire life in Puerto Rico and only has limited English ability as a native Spanish speaker."

We find no support in the record for Aponte's assertion that a reasonable observer could conclude that the district court sentenced him based on his national origin. The court never referred to, or even alluded to, Aponte's national origin at sentencing. Cf. Onwuemene, 933 F.2d at 651-52 (concluding that defendant's nationality was a factor in sentencing because the

court had stated: "The other thing that . . . warrants imposition at the high end of the guideline range: You are not a citizen of this country. This country was good enough to allow you to come in here . . . and you repay that kindness by committing a crime like this."). Further, there is simply no indication that the court's sentence was impacted by where Aponte was born or that the court would have imposed a shorter sentence on an individual born outside of Puerto Rico who had committed the same conduct in Puerto Rico. Cf. United States v. Trujillo-Castillon, 692 F.3d 575, 579 (7th Cir. 2012) ("By lumping the defendant in with the Mariel people and expressly contrasting the values held by Americans with people, like the defendant, 'who come[ ] from Cuba,' the court arguably made [his] national origin a factor at sentencing." (first alteration in original)). And, as we noted above, under our precedent a court "may consider community-based and geographic factors" because "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence." United States v. Flores-Machicote, 706 F.3d 16, 22-23 (1st Cir. 2013); see United States v. Millán-Román, 854 F.3d 75, 79 (1st Cir. 2017) ("[D]istrict courts may take into account not only the need for individual deterrence, but also the need for community deterrence within the defendant's particular community."). Thus, based on "[a] fair reading of the entire [sentencing] transcript," we conclude that the court's

reference to such community-based factors does not support an inference that it relied on Aponte's nationality. United States v. Munoz, 974 F.2d 493, 496 (4th Cir. 1992).

## C. Whether the District Court's Sentence Was Procedurally Unreasonable

Aponte's final argument is that the district court's 120-month sentence was procedurally unreasonable. His claim of procedural error rests on two premises: (1) the district court failed to adequately explain its decision to impose "a colossal 120-month term" that "so drastically shot past both the applicable range and the parties' recommendations"; and (2) the district court based its sentencing decision on unreliable statistical data.

## 1. Standard of Review

We typically review a preserved challenge to the procedural reasonableness of a sentence under "a multifaceted abuse-of-discretion standard."[13] United States v. Sierra-Jiménez, 93 F.4th 565, 569 (1st Cir. 2024) (citation omitted). Under this umbrella standard, "we review the sentencing court's findings of fact for clear error and questions of law (including the court's interpretation and application of the sentencing guidelines) de novo." United States v. Carrasquillo-Vilches, 33 F.4th 36, 41

___

[13] Although Aponte suggests in a single heading of his opening brief that he challenges his sentence as "procedurally and substantively infirm," his arguments address only the procedural reasonableness of his sentence. We therefore confine our review to the issue of procedural reasonableness.

(1st Cir. 2022) (quoting United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020)).

Aponte suggests that this standard applies here, as he preserved his claim of procedural error. To be sure, he objected below "to the substantive and procedural unreasonableness of the sentence," explaining at length that, although the district court had correctly calculated the guideline range, "the record . . . [did] not support such a drastic enhancement for this case" because the parties' recommended sentences already had accounted for the nature and amount of the contraband seized. These statements are sufficient to preserve his procedural claim that the court inadequately justified its upward variance. See United States v. Perez-Delgado, 99 F.4th 13, 20 (1st Cir. 2024) (explaining that "'our preservation policy' . . . simply requires 'putting the district court on notice of the error'" and therefore a defendant need not frame an objection "with exquisite precision" to preserve it (citation omitted)); see also United States v. Melendez-Hiraldo, 82 F.4th 48, 54 (1st Cir. 2023) (concluding that defendant preserved inadequate-explanation claim when his counsel argued below that "[t]here [were] no proper reasons for the excessively upward variance" and that, despite "the proper guideline for the charge [being] 120 months," "[t]he parties came up with an already-included variance"). Indeed, the record supports the conclusion that the district court was put on notice

of Aponte's inadequate-explanation claim because it provided additional explanation for its sentence in response to Aponte's objection. We therefore review Aponte's claim of inadequate justification for an abuse of discretion.

However, there is nothing in the record suggesting that Aponte signaled to the district court that he was also challenging the sentence because it was based on unreliable statistical information. Our review of this specific procedural challenge is therefore for plain error.[14] See United States v. Colón-De Jesús, 85 F.4th 15, 25 (1st Cir. 2023) (explaining that a general procedural reasonableness objection was insufficient "to give the district court notice of the specific issue raised on appeal" and therefore plain error review applied to that issue (citation omitted)). And because Aponte "fails to even mention plain error, let alone argue for its application here," he "definitively waives th[is] argument[]." United States v. Morales-Veléz, 100 F.4th 334, 345 (1st Cir. 2024) (citation omitted). We therefore limit

---

[14] Although the government failed to request plain error review for this claim, we decline to review the issue for abuse of discretion. See United States v. Figueroa-Ocasio, 805 F.3d 360, 367 (1st Cir. 2015) (explaining that, "[w]hen the government fails to request plain error review," we may "review the claim under the standard of review that is applied when the issue is properly preserved below" but, "even if the [g]overnment [makes] an affirmative concession as to the standard of review, we [are] not . . . bound by it" (first alteration in original)).

the remainder of our analysis to the adequacy of the court's justification for the variant sentence it imposed.

### 2. The Adequacy of the Court's Explanation

Aponte argues that "the district court failed to articulate an adequate basis . . . for deviating so significantly" from the parties' sentencing recommendations.[15]  He contends that the district court's concerns about the parties' recommendations (i.e., that they did not "reflect[] the seriousness of the offenses, promote[] respect for the law, protect[] the public from additional crimes by Mr. Aponte, . . . [or] address the issues of deterrence and punishment") were "generic" and "[u]nmoored from any individual characteristics of" Aponte or his offenses. (Quoting United States v. Rivera-Berríos, 968 F.3d 130, 137 (1st Cir. 2020).)  Additionally, he argues that the court's statement that it had "considered" the evidence seized was insufficient because the court did not explain "which specific facts of the case motivated its decision and why those facts led to its decision."  (Quoting United States v. Muñoz-Fontanez, 61 F.4th

---

[15] Aponte asserts that the court "catapulted past the aggregate 70-to-76-month guideline range" by about four years. Although the parties agreed to recommend an upwardly variant sentence between ninety-four months and 100 months, we must compare the court's upwardly variant sentence to the guideline range of seventy to seventy-six months (i.e., sixty months for the firearm charge and ten to sixteen months for the drug charge). See Morales-Veléz, 100 F.4th at 342 ("[T]he starting point for a court's sentencing determination is the guideline range, not the parties' recommendations." (citation omitted)).

212, 215 (1st Cir. 2023).) Finally, Aponte contends that "the bullets and magazines recovered" and the type and quantity of the drugs seized were consistent with a mine-run gun-possession offense and drug offense, and, therefore, the record does not permit an inference as to the court's reasoning for the variance.

Before we consider the merits of Aponte's procedural unreasonableness claim, we first lay out some guiding principles. It is well established that a sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). The court's explanation for a sentence must demonstrate that it "conduct[ed] an 'individualized assessment' of the § 3553(a) factors . . . based on the facts presented in a particular . . . case." United States v. Colón-Cordero, 91 F.4th 41, 51 (1st Cir. 2024) (quoting Gall v. United States, 552 U.S. 38, 50 (2007)). And "[w]hen a court imposes a sentence above the guidelines sentencing range, 'it must justify the upward variance.'" Id. (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014)); see Rita v. United States, 551 U.S. 338, 357 (2007) ("Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so."). To justify an upward variance, a court must explain why it deems the defendant's case different from the norm. United States v. Reyes-Correa, 81 F.4th 1, 10 (1st Cir. 2023). The more a court deviates from the guideline range, "the more compelling

the . . . court's justification must be." Id. (quoting Del Valle-Rodríguez, 761 F.3d at 177). Still, "brevity is not to be confused with inattention." United States v. Dávila-González, 595 F.3d 42, 48 (1st Cir. 2010) (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 42 (1st Cir. 2006)).[16]

To start, the record demonstrates that the court conducted an individualized assessment of Aponte's case. Acknowledging the parties' requested sentences, the court explicitly stated that it had "identified factors . . . that warrant[ed] a [higher] variant sentence," including Aponte's possession of an "AK-style assault pistol, 123 rounds of 7.62 ammunition for assault weapons used by NATO country military forces," multiple high-capacity magazines, three bags and four containers of marijuana, and twenty-nine foil decks of heroin. Although the court could have provided more explanation about why these facts led to the particular upward variance it imposed, the court's attention to such details indicates that it "paid heed to the particulars of [Aponte's] case." Rivera-González, 776 F.3d at

_____

[16] The district court here "offered an undifferentiated explanation for its imposition of the aggregate [120-month] sentence, and it did not explicitly state what factors contributed most directly to the imposition of each of the component sentences." United States v. Ortiz-Pérez, 30 F.4th 107, 114 (1st Cir. 2022). But, as we explain momentarily, "we can fairly infer from the record the factor[s] that drove the court's decision to impose" an upward variance as to each of the two charges, given the parties' arguments below. Id.

- 33 -

50; see Flores-Machicote, 706 F.3d at 24 (noting that court "also paid particular heed both to the fact that the defendant's weapon was 'a nine millimeter, semi-automatic pistol with a high capacity magazine,' and to the defendant's likely recidivism").

Further, it was within the court's discretion to consider the type of firearm (a machinegun), significant amount of ammunition, and multiple high-capacity magazines that Aponte possessed as aggravating factors supporting an upward variance for the firearm charge. Recall that Aponte had in his car not only an AK-style pistol but also, among other items: 123 rounds of 7.62 caliber ammunition; multiple high-capacity rifle magazines; and two .40 caliber pistol magazines. The relevant guideline provision here, U.S.S.G. § 2K2.4(b), is triggered by the use or carrying of a firearm "in relation to any . . . drug trafficking crime" or the possession of a firearm "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A)(i); see U.S.S.G. § 2K2.4(b); see also Melendez-Hiraldo, 82 F.4th at 56 (noting that section 2K2.4(b) "sets the sentence for defendants 'convicted of violating section 924(c)' as 'the minimum term of imprisonment required by statute' regardless of the severity of the underlying crime or the individual characteristics of the defendant" (quoting U.S.S.G. § 2K2.4(b))). Because this guideline only accounts for a "firearm," Aponte's possession of not only a machinegun but also a large cache of ammunition and high-capacity magazines supported

an upward variance. See Morales-Veléz, 100 F.4th at 342-44 (concluding that section 2K2.4(b) did not account for defendant's possession of a machinegun and 125 rounds of ammunition and therefore district court did not err in imposing upward variance based on such factors); cf. United States v. Rivera-Santiago, 919 F.3d 82, 83-86 (1st Cir. 2019) (upholding eleven-month upward variance imposed under section 2K2.1 on defendant who possessed two empty, large-capacity magazines and 127 rounds of ammunition, which were "factors that differentiate[d] [his] offense from the 'run-of-the-mill' felon-in-possession offense").

Relying on Rivera-Berríos and United States v. García-Pérez, Aponte suggests that the high-capacity magazines and the quantity of the ammunition recovered from his car were consistent with a mine-run gun-possession offense and thus insufficient to justify an upward variance. See Rivera-Berríos, 968 F.3d at 133, 135; United States v. García-Pérez, 9 F.4th 48, 53 (1st Cir. 2021). In making this argument, Aponte contradicts his own position below. Notably, in his sentencing memorandum to the district court, Aponte recognized that "the nature and quantity of [the] evidence seized," including a "great quantity of extended magazines and ammunition," justified an upward variance. At the sentencing hearing, he again acknowledged "the type of firearm[ and] ammunition that was seized" as reasons for an above-the-guideline sentence on the firearm charge. Aponte's

- 35 -

concession below was correct.  Unlike in Rivera-Berríos, where the defendant possessed two eighteen-round magazines, or García-Pérez, where the defendant "had one more magazine and twenty-eight more rounds than the defendant in Rivera-Berríos," Aponte possessed a substantial cache of ammunition and multiple high-capacity magazines.  García-Pérez, 9 F.4th at 53; see Rivera-Berríos, 968 F.3d at 133, 135.  There was no abuse of discretion by the district court in concluding, on this record, that this was not a mine-run case.

Additionally, we can infer the court's reasoning for the upward variance on the drug charge from the sentencing record. Aponte recognized in his sentencing memorandum the "gravity" of his possession of "an AK Pistol, along with all the ammunition and controlled substances."  (Emphases added.)  He also acknowledged that he "was under the influence of [several] drugs" at the time of his arrest and that he "fell asleep while driving," which caused the car accident.  At the sentencing hearing, Aponte similarly addressed "the controlled substances that were seized."  The court then highlighted the variety of drugs and drug paraphernalia seized as among those "factors . . . that warrant[ed] a variant sentence." From all this, we can deduce that the district court reasoned that it was Aponte's driving under the influence while possessing a loaded firearm and large cache of ammunition that took his drug offense outside the heartland of the relevant sentencing

guideline, U.S.S.G. § 2D1.1.  See United States v. Ortiz-Pérez, 30 F.4th 107, 114 (1st Cir. 2022) (explaining that district court's reasoning for a variance can be gleaned "by fair inference from the sentencing record").  The district court was entitled to rely on these factors to support an upward variance for the drug charge.

Further, the decisions that Aponte highlights in his Rule 28(j) letter to this court are inapposite.  See Colón-Cordero, 91 F.4th 41; United States v. Flores-González, 86 F.4th 399 (1st Cir. 2023) (en banc).  First, Aponte suggests that Colón-Cordero and this case share "the same error: the court's mere listing of the items seized and basic biographical information about [him]."  But, as he also recognizes, the district court in Colón-Cordero merely listed the facts without placing "'emphasis on any particular circumstance,' and thus it [was] 'impossible to tell' what the court's rationale was for landing on [a] 9-month upward variance."  91 F.4th at 53 (quoting Muñoz-Fontanez, 61 F.4th at 214).  Here, by contrast, the district court explained that it had "identified factors . . . that warrant[ed] a [higher] variant sentence" and then highlighted certain items seized from Aponte's car, including an "AK-style assault pistol, 123 rounds of 7.62 ammunition for assault weapons used by NATO country military forces," multiple high-capacity magazines, and a variety of drugs and drug paraphernalia.  And, with regard to the firearm charge, Aponte himself requested an upward variance based on the "nature

and quantity of evidence seized," highlighting specifically, in his own words, the "AK pistol and a great quantity of extended magazines and ammunition." Although he objects to the district court's determination that an even greater variance was justified, we can nevertheless infer that the district court's higher sentence was based on the very same evidence that it had just described, much of which Aponte conceded justified an upward variance on the firearm charge.

Next, Aponte emphasizes that our en banc decision in Flores-González made clear that certain of our prior decisions, including Rivera-Berríos and United States v. Carrasquillo-Sánchez, 9 F.4th 56 (1st Cir. 2021), "remain controlling circuit precedent." Flores-González, 86 F.4th at 413. That much is true. As in Rivera-Berríos and Carrasquillo-Sánchez, Aponte continues, the district court here based its sentencing decision on community-centered concerns (i.e., the "acute problem[] of gun violence in Puerto Rico") "without tying that community-centered concern in any way to the case or to . . . Aponte's circumstances." But the circumstances in Rivera-Berríos and Carrasquillo-Sánchez are distinct from those before us here. In Rivera-Berríos, the court imposed a variance based solely on "the mere fact that the offense of conviction involved a machine gun," even though that factor "was already fully accounted for in the guideline [section 2K2.1(a)(4)(B)] calculus"

and there was no basis in the record "for giving that factor extra weight." 968 F.3d at 135-36. Additionally, the court highlighted Puerto Rico's crime trends, but its concerns were "[u]nmoored from any individual characteristics of either the offender or the offense of conviction." Id. at 136-37. Because the court did not identify (and the record did not reveal) any characteristic that removed the case "from the mine-run," we vacated the defendant's sentence and remanded for resentencing. Id. at 137. Similarly, in Carrasquillo-Sánchez, "the driving force behind the upward variance" was a factor already accounted for in the applicable guideline, the type of firearm possessed, and the "[c]ourt considered the high incidence of gun violence in Puerto Rico 'unmoored from any individual characteristics.'" 9 F.4th at 61 (citation omitted). Thus, as in Rivera-Berríos, we vacated the defendant's conviction and remanded for resentencing. See id. at 63.

Unlike in Rivera-Berríos and Carrasquillo-Sánchez, the district court here did not base its sentencing decision on a factor that already was accounted for in the guidelines. See U.S.S.G. § 2K2.4(b); United States v. Valle-Colón, 21 F.4th 44, 49 (1st Cir. 2021); Melendez-Hiraldo, 82 F.4th at 56. Additionally, the record does not support a finding that the district court based its sentencing decision entirely on community-centered concerns, untethered from Aponte's offenses and characteristics. Rather,

- 39 -

"the district court sentenced [Aponte] in light of the totality of a myriad of relevant circumstances," and "[a]lthough community-based considerations were a part of this mix, there is no compelling indication that the court gave undue weight to them." Rivera-González, 776 F.3d at 51; see United States v. Bermúdez-Meléndez, 827 F.3d 160, 166 (1st Cir. 2016) (rejecting appellant's argument that sentencing court improperly focused on community-based considerations because, "though it decried the pervasive problems associated with violent crimes in Puerto Rico, it did so only glancingly -- and then, only in connection with the need for deterrence").

In sum, because the court identified several factors behind its decision to impose an upwardly variant sentence of 120 months, see Bermúdez-Meléndez, 827 F.3d at 164, and we can "infer[]" additional reasons "from the sentencing record," Ortiz-Pérez, 30 F.4th at 114, we reject Aponte's procedural reasonableness claim.

### III. CONCLUSION

For all these reasons, we **affirm** the district court's sentence and judgment.